James White, *Treasurer, versus* Daniel Wilkins *&c al.* Same *versus* Same.

Since the Revised Statutes were in force, (c. 104, § 13,) more than one suit may be sustained upon the official bond of a sheriff to the treasurer of the State, for the benefit of different claimants and for separate and independent acts of official neglect or misconduct ; and the pendency of one such suit furnishes no cause for the abatement of another, commenced subsequently.

And it is immaterial whether such bond was made before or after the Revised Statutes went into operation as laws.

The statute of 1842, c. 19, providing that when an action is pending on an official bond of the sheriff to the State, any other person, " who may have a right of action on such bond, may file an additional declaration in the same action," and " have all the rights of a plaintiff in the suit," affects the remedy only, and is not unconstitutional.

No private suit can be maintained on an official bond made to the State, or its treasurer, without its consent. And when the statute giving consent prescribes the remedy, that remedy must be pursued.

The statute of 1842, c. 19, does not take away the right to institute and maintain more than one suit upon such bond.

The first of these actions was originally commenced by Silas Pierce & Co. in the name of the treasurer of the State

against Wilkins, late sheriff of the county of Penobscot, and against his sureties, for neglect of official duty in one of his deputies. Additional declarations were afterwards filed in that suit by Dinsmore & al., by Homes & al., by Harriman and by Pratt, for injuries alleged by them to have been respectively sustained by other defaults of deputies of Wilkins.

The second suit was an action brought on the same bond as the first for the benefit of Joseph Eaton, to obtain satisfaction for · the loss alleged to have been sustained by him by another neglect of official duty by a deputy of Wilkins.

To each of the additional declarations, and to the second suit, a plea in abatement was filed, because a prior suit was pending for the same cause of action. To each of these pleas there was a replication, alleging, that the suit, or additional declaration, was instituted for the benefit of different persons, and for a separate neglect of official duty. To each of the replications there was a demurrer, which was joined.

Able and elaborate written arguments were furnished to the Court, on January first, 1845, by

*A. W. Paine,* for the plaintiff in interest in the second action, and for some of those who had filed additional declarations: — by

*I. Washburn, jr.* for others who had filed additional declarations: — and by

*J. B. Hill,* for the defendants.

The opinion of the Court was drawn up by

Shepley J. — In the action first named, James Dinsmore & al. Henry Homes & al. James T. Harriman and Eleazer F. Pratt & al. have filed additional declarations, and caused the defendants to be summoned to answer them by virtue of the provisions of the act passed on March 14, 1842. The defendants have appeared, and filed pleas in abatement, alleging the pendency of a prior suit between the same parties for the same cause of action. To the second suit above named a like plea in abatement has been pleaded. Replications have

been made to the several pleas, and the cases are presented upon a demurrer to them. Admitting the pleas in abatement to contain all the necessary averments, their effect must depend upon a construction of the Rev. Stat. c. 104, § 13, and the act of 1842, c. 19. It appears by the pleadings, that the prior and the present suits were instituted upon the official bond of Wilkins, as sheriff of the county of Penobscot. And that the prior suit was instituted for the benefit of a different person from those appearing in the later suits.

The Stat. c. 104, § 13, provides, that, when the condition of such a bond shall be broken to the injury of any person, such person may, at his own expense, institute an action in the name of the treasurer of the State, and prosecute the same to final judgment and execution ; and that in such case the writ shall be indorsed by the person, for whose benefit the suit is commenced, and with the name of his attorney, which indorser shall be alone answerable for all costs. It could not have been the intention, that any suit should be commenced by a writ of *scire facias* on a judgment ; for the action is to be upon the bond, and is to be prosecuted to final judgment. There can be no doubt, that the language is sufficiently broad to authorize each injured person to commence a separate suit for his own benefit. The provisions of the act of February 20, 1821, c. 50, § 3, which authorized a writ of *scire facias* to be sued out for the recovery of further damages, after a judgment had been obtained for the penalty on a breach of such a bond, were repealed without being reenacted in the Revised Statutes. To determine, that the legislature did not intend to permit several suits to be pending at the same time for the benefit of different persons, although between the same parties, and upon the same bond, is to conclude, that it omitted to provide any remedy whatever for any other person than that one, who should first commence and obtain a judgment in an action upon the bond ; and to make such a conclusion, when the statute declares, that any person injured may have an action on the bond at his own expense and for his own benefit. It is contended, however, that the legislature did "either by

accident or design," omit to reenact the former provision, authorizing a suit by *scire facias*. And that the thirteenth section cannot be construed to authorize several actions, on such an official bond, to be pending at the same time, because it is but a reenactment of the provisions contained in the sixth section of c. 91, of the statute of 1821, which had received a contrary construction. And it is true, that provisions essentially the same were contained in the statute last named. And that they appear there to have been little more than a reenactment of the provisions contained in the first section of the act of Massachusetts, passed on March 13, 1806. Although no case has been cited, which decides, that no action could have been maintained upon the bond after a judgment in one had been obtained for the penalty, and that all further remedy was to be sought by a writ of *scire facias* founded on that judgment; it may be admitted, that such was or would have been the judicial construction, taking into consideration those provisions in connexion with the provisions of the act affording a remedy in subsequent cases by a writ of *scire facias* on the judgment. For although the language might be sufficiently comprehensive to admit of several suits upon the bond, yet, where the Court perceived a special provision in another act for a different remedy in all future cases, after there had been a judgment entered in one suit for the penal sum of the bond, it might properly conclude, that the intention was, that such prescribed remedy should be pursued. But it would by no means follow, that such should be the construction, when the Court finds, that the legislature, on a revision of the statutes, has provided a remedy by the use of the former general language, and that it has wholly omitted to reenact the provision for a different remedy, which operated to restrain the effect of that general language. The inference would rather be, that it was the intention to permit such general language to have its full and unrestrained effect. It is contended, that this would not be a correct inference, because the writ of *scire facias* may still be maintained without any statute provision authorizing it. *Scire facias* on a judgment in a personal action

could not be maintained before the statute of Westminster 2, which gave it, because the party might have a new action upon his judgment. That statute having been a part of the law received by our ancestors, the writ may usually be maintained here without any statute provision. But not in a case like the present; for no private suit can be maintained on an official bond made to the State, or its treasurer, without its consent. *Commonwealth* v. *Hatch,* 5 Mass. R. 191. And when the statute giving consent prescribes the remedy, that remedy must be pursued.

It is further insisted that if such be the true construction, this bond, which was made before the revision of the statutes, should not be affected by it; because it would give to it a new character and subject the obligors to an indefinite number of suits. The only change in the statutes, since the bond was made, is to deprive a person injured of a remedy to enforce the performance, which before existed. There has been no attempt to vary the terms of the contract or its obligations. The present statute, if such be the true construction, will not necessarily increase the number of suits. It will only change most of them from *scire facias* on the judgment to an action on the bond, which will give to the defendants greater privileges than the former process would have permitted, by allowing them to deny and contest anew its execution and the breach of it.

The act of March 14, 1842, c. 19, does not afford a remedy by the writ of *scire facias;* nor does it require, that the person injured should institute a new suit upon the bond, or deny to him the right to do so. It provides a remedy before unknown to the law, by authorizing him to file an additional declaration in a writ already sued out upon the bond, and by a summons, issued by the clerk and indorsed by the person for whose benefit it is issued, to call upon the defendants to answer to that declaration. It is not perceived, that the responsibilities of the obligors on such an official bond can be increased, or that their rights cannot be as fully protected by these enactments, as they would have been by the former pro-

visions of the statutes. It will be unnecessary to inquire, whether the pleas contain all the necessary averments. They are all adjudged to be bad; and the defendants are to answer over in each process.